**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-00781-NYW

NANCY CAHEY, and
KEVIN WILLIAMS,

      Plaintiffs,

v.

INTERNATIONAL BUSINESS MACHINES CORPORATION,

      Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

Magistrate Judge Nina Y. Wang

    This matter comes before the court on Defendant International Business Machines Corporation's ("IBM" or "Defendant") Motion to Dismiss Plaintiffs' Complaint or, in the Alternative, to Dismiss or Transfer Plaintiff Williams's Claims (the "Motion" or "Motion to Dismiss"), filed May 26, 2020. [#8]. The undersigned Magistrate Judge considers the Motion pursuant to 28 U.S.C. § 636(c) and the Order of Reference dated June 11, 2020, [#13], and concludes that oral argument will not materially assist in the resolution of this matter. Accordingly, having reviewed the Motion, the Parties' briefing, and the applicable case law, I **GRANT IN PART and DENY IN PART** the Motion to Dismiss for the reasons stated herein.

### BACKGROUND

    The court draws the following facts from the Complaint and the documents attached to the Motion to Dismiss and presumes they are true for purposes of the instant Motion.[1] Plaintiffs Nancy

---

[1] Because the documents attached to the Motion to Dismiss appear authentic, are referenced in the Complaint, and are central to Plaintiffs' claims, I consider the documents when analyzing the Motions to Dismiss. *See Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019).

Cahey ("Ms. Cahey") and Kevin Williams ("Mr. Williams") (collectively, "Plaintiffs") initiated

this civil action against their employer IBM on March 23, 2020.  *See* [#1].  Plaintiffs are each

first-line managers for IBM, with Ms. Cahey located in Castle Pines, Colorado and Mr. Williams

located in Alpharetta, Georgia.  [*Id.* at ¶¶ 4-5].  As IBM employees, Plaintiffs are subject to IBM's

sales commissions compensation structure, which includes a base salary and a sales commission

based on certain criteria.  *See* [*id.* at ¶¶ 11-32, 37-38, 74, 86, 127].  According to Plaintiffs, IBM

informed them orally and in writing that their sales commissions were uncapped.  *See, e.g.*, [*id.* at

¶¶ 19-32].

Relevant here, Plaintiffs' commissions structure was contained in their respective Incentive

Plan Letters ("IPLs"), which set forth when commissions are deemed earned.  *See* [#8-1 at 4, 9].

Further, the IPLs read, in pertinent part:

> **Right to Modify or Cancel:** IBM reserves the right to adjust the Plan terms, including, but not limited to, changes to sales performance objectives, assigned territories or account opportunities, applicable incentive payment rates or similar earnings opportunities, or to modify or cancel the Plan, for any individual or group of individuals, including withdrawing an offered or accepted Incentive Plan Letter.
>
> **Earnings:** Incentive payments you may receive for Plan-to-Date achievement are a form of advance payment based on incomplete business results. Your incentive payments are earned under the Plan terms, and are no longer considered Plan-to-Date advance payments, only after the measurement of complete business results following the end of the full-Plan period. . . .
>
> **Progress Reports:** Any periodic information regarding Plan-to-Date achievement that may be made available to you before the completion of the full-Plan period and final calculation of payments is provided for informational purposes only, and does not constitute a promise by IBM to make any specific distributions to you or to any other employee.
>
> . . .
>
> **Adjustments for Errors:** IBM reserves the right to review and, in its sole discretion, adjust or require repayment of incorrect incentive payments resulting from incomplete incentives processes or other errors in the measurement of achievement or the calculation of payments, including errors in the creation or

communication of sales objectives. Depending on when an error is identified, corrections may be made before or after the last day of the full-Plan period, and before or after the affected payment has been released.

**Review of a Specific Transaction:** If a specific customer transaction has a disproportionate effect on an incentive payment when compared with the opportunity anticipated during account planning and used for the setting of sales objectives, or is disproportionate compared with your performance contribution towards the transaction, IBM reserves the right to review and, in its sole discretion, adjust the incentive achievement and/or related payments.

[*Id.* at 4-5, 9-10]. An accepted IPLs is a prerequisite to receiving commissions, and IBM retains the authority to recoup any commissions paid to employees that exceed their "subsequently calculated earnings." [*Id.*]. By accepting the IPLs, Plaintiffs "acknowledge[d] that [they] have read and understood the terms of the [IPL]." [*Id.* at 4, 9].[2]

In or around June 2019, Plaintiffs and their respective sales teams closed a deal with HCL Technologies (the "HCL deal") and received sales commissions according to their compensation plans. *See* [#1 at ¶¶ 33-47]. Yet, in or about October 2019, IBM reversed course and informed Plaintiffs that, pursuant to a "hidden" criterion known only to IBM, Plaintiffs were not entitled to any commissions from the HCL deal. *See* [*id.* at ¶¶ 48-62]. IBM allegedly withheld future commissions earned by Plaintiffs to correct the commissions improperly paid from the HCL deal, *see* [*id.* at ¶¶ 62-67], prompting Plaintiffs to file the instant civil suit, *see generally* [#1]. Pursuant to their Complaint, Plaintiffs asserts claims under Colorado and Georgia law for: (1) fraudulent misrepresentations and omissions/concealment ("Claim 1"); (2) negligent misrepresentation

---

[2] While the Parties dispute the importance of the IPL and its effect(s), if any, on Plaintiffs' claims, the Parties do agree that the IPL is not an enforceable contract. *Compare* [#8; #20] *with* [#16 at 26-27]. Based on the plain language of the IPL, the court likewise agrees that the IPL is not an enforceable contract, *see Vernon v. Qwest Commc'ns Int'l, Inc.*, 857 F. Supp. 2d 1135, 1153-54 (D. Colo. 2012) (explaining that "an illusory contract is said to lack mutuality of obligation" and is therefore unenforceable under Colorado), but does not agree with IBM that this alone forecloses all of Plaintiffs' asserted claims.

("Claim 2"); (3) quantum meruit ("Claim 3"); (4) unjust enrichment ("Claim 4"); (5) violation of the Colorado Wage Act, asserted by Ms. Cahey only ("Claim 5"); (6) declaratory judgment ("Claim 6"); (7) breach of contract, asserted in the alternative ("Claim 7"); and (8) though styled as a claim, punitive/exemplary damages ("Claim 8"). *See generally* [*id.*].

On May 26, 2020, IBM filed its Motion to Dismiss, arguing that the court should dismiss Plaintiffs' Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, or that the court should dismiss Mr. Williams's claims for improper venue or, as an alternative to dismissal, sever and transfer Mr. Williams's claims to the United States District Court for the Northern District of Georgia ("Northern District of Georgia"). [#8]. Plaintiffs have since responded in opposition to the Motion to Dismiss and Defendant has since replied. *See* [#16; #20]. Because the Motion is ripe for disposition, I consider the Parties' arguments below, beginning first with Defendant's arguments regarding transfer of Mr. Williams's claims, followed by Defendant's Rule 12(b)(6) arguments.

## LEGAL STANDARDS

### I.     Rule 12(b)(3) – Improper Venue

Rule 12(b)(3) of the Federal Rules of Civil Procedure allows for dismissal of a plaintiff's complaint "only when venue is improper in the forum in which a case was brought." *Weathers v. Circle K Stores, Inc.*, 434 F. Supp. 3d 1195, 1205 (D.N.M. 2020) (ellipsis, brackets, and internal quotation marks omitted)). In considering a Rule 12(b)(3) motion to dismiss, the court may examine facts outside of the complaint but must accept all well-pleaded allegations as true if uncontroverted by the defendant's evidence and must draw all reasonable inferences and resolve all factual ambiguities in the plaintiff's favor. *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1260 (10th Cir. 2012). Once a defendant challenges venue, the burden lies with the plaintiff to

4

demonstrate the appropriateness of her chosen forum—a choice rarely disturbed by the court unless it is clear that the facts giving rise to the lawsuit have no material relation or connection to the chosen forum. *Scott v. Buckner Co.*, 388 F. Supp. 3d 1320, 1324 (D. Colo. 2019).

## II. Rule 12(b)(6) – Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Walker v. Mohiuddin*, 947 F.3d 1244, 1248-49 (10th Cir. 2020) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cummings v. Dean*, 913 F.3d 1227, 1238 (10th Cir. 2019) (internal quotation marks omitted). "The complaint does not need detailed factual allegations, but the factual allegations must be enough to raise a right to relief above the speculative level." *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1234 (10th Cir. 2020) (internal quotation marks omitted). In making this determination, the "court accepts as true all well-pleaded factual allegations in [the] complaint and views those allegations in the light most favorable to the plaintiff." *Straub v. BNSF Ry. Co.*, 909 F.3d 1280, 1287 (10th Cir. 2018). But, in some instances, the court may consider materials beyond the complaint if the documents are central to the plaintiff's claims, referred to in the complaint, and the parties do not dispute their authenticity. *See Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019).

## ANALYSIS

## I. Venue – Mr. Williams

IBM argues the court should dismiss Mr. Williams's claims for improper venue or sever and transfer Mr. Williams's claims to the Northern District of Georgia in the alternative to

dismissal. *See* [#8 at 17-20; #20 at 13-15]. According to IBM, venue in this District is improper because IBM does not reside in this District, Mr. Williams's claims have no material or significant connection to this District, and Mr. Williams lives and works in Georgia where a district exists to maintain this civil action. *See* [#8 at 18; #20 at 14]. In the alternative, IBM asks the court to transfer this matter to the Northern District of Georgia under 28 U.S.C. § 1404(a). For the following reasons, I respectfully agree with IBM that transfer of Mr. Williams's claims to the Northern District of Georgia is appropriate under 28 U.S.C. § 1404(a).

### A.    Venue

The federal venue statute "govern[s] the venue of all civil actions brought in district courts of the United States[,]" regardless of "whether the action is local or transitory in nature." 28 U.S.C. §§ 1391(a)(1)-(2). The statute provides that venue may lie in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

*Id.* §§ 1391(b)(1)-(3). Plaintiff has the burden to establish venue is proper in this district." *Gwynn v. TransCor Am., Inc.*, 26 F. Supp. 2d 1256, 1261 (D. Colo. 1998) ("Once venue is challenged, plaintiff must prove that it is proper by presenting specific facts to support the allegations.").

In its Motion to Dismiss, IBM argues that venue is not proper in this District under any of the criteria provided by § 1391(b)(1)-(3). [#8 at 17-18]. Plaintiffs argue in their Response that venue in this District is appropriate because IBM resides in Colorado for purposes of § 1391(c)(2),

notwithstanding that New York constitutes IBM's corporate citizenship.  *See* [#16 at 28 & n.13].

I respectfully agree with Plaintiffs.

Section 1391(c)(2) sets forth the standard for determining residency of a domestic entity for the purpose of venue and provides, in pertinent part, "an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question[.]"  28 U.S.C. § 1391(c)(2). According to Plaintiffs, the court "undisputedly" has personal jurisdiction over IBM—a point IBM does not contest.  [#1 at ¶ 8; #16 at 28].  Given that IBM does not challenge the court's personal jurisdiction over it, *see Am. Fid. Assur. Co. v. Bank of New York Mellon*, 810 F.3d 1234, 1237 (10th Cir. 2016) (discussing how a defendant may waive the defense of lack of personal jurisdiction), and finding no basis to conclude otherwise, *see Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (cautioning that *sua sponte* dismissal for lack of personal jurisdiction is justified only in" extraordinary instances when the claim's factual backdrop clearly beckons the defense."  (internal quotation marks omitted)), I find that IBM resides in this District for purposes of § 1391(c)(2).  Indeed, IBM does not challenge such a conclusion in its Reply.  Accordingly, venue in this District is proper pursuant to § 1391(b)(1).

### B.      Transfer of Venue

Even though venue may be appropriate in a specific district court, the court retains discretion to "transfer any civil action to any other district or division where it might have been brought" "[f]or the convenience of the parties and witnesses [and] in the interest of justice[.]"  28 U.S.C. § 1404(a).  Here, IBM does not seek to transfer the entire action to the Northern District of

Georgia.  As clarified in its Reply,[3] Defendant argues that "the Court should sever Williams's claims from this action under Federal Rule of Civil Procedure 21 and then effectuate the requested transfer of venue to the Northern District of Georgia with respect to Williams's claims only, while retaining jurisdiction over Cahey's claims."  [#20 at 13].  While § 1404(a) speaks in terms of civil actions, Rule 21 of the Federal Rules of Civil Procedure allows the court, "on its own [and] at any time, add or drop a party" and to "sever any claim against any party."  Fed. R. Civ. P. 21.  Thus, the court first considers whether severing Mr. Williams's claim pursuant to Rule 21 is permissible, because such severance would be a prerequisite to any transfer.

 ***Rule 21.***  Plaintiff argues severance followed by transfer is improper here, as "this Court at times has held that severance under Rule 21 requires actual misjoinder under Rule 21."  [#16 at 29 (citing *Magluta v. U.S. Federal Bureau of Prisons*, 2013 WL 1151815, at *2 (D. Colo. Mar. 19, 2013))].  Certainly, at times, severance under Rule 21 requires actual misjoinder, given the plain language of Rule 21.  But *Magluta* does not stand for the proposition that Rule 21 necessarily requires misjoinder to sever a party.  The plain language of Rule 21 contemplates "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party."  Fed. R. Civ. P. 21. "Courts in this circuit generally have found that misjoinder is not a prerequisite to severance." *Safe Streets All. v. Alternative Holistic Healing, LLC*, Case No. 15-CV-00349-REB-CBS, 2015 WL 4245823, at *1 (D. Colo. July 14, 2015) (collecting cases).  As observed by the *Safe Street* court, the language of Rule 21 is very broad, and the court retains significant discretion in determining whether severance is appropriate.  *Id.*  Here, this court finds that contrary to Plaintiffs'

---

[3] Plaintiffs argue that § 1404 only allows for the transfer of the entire case, not the transfer of claims.  [#16 at 29].  But they concede that a court can sever some claims under Rule 21, and then transfer the entirety of that new action.  [*Id.*].

arguments, severance is permissible, so it now turns to whether transfer is appropriate pursuant to § 1404(a).

   ***Section 1404(a).***   The burden lies on the defendant to demonstrate that transfer is appropriate based on a consideration of: (1) the plaintiff's chosen forum; (2) the accessibility of witnesses and other sources of proof; (3) the cost of making the necessary proof; (4) the questions as to the enforceability of a judgment if one is obtained; (5) the relative advantages and obstacles to a fair trial; (6) the difficulties that may arise from congested dockets; (7) the possibility of the existence of questions arising in the area of conflict of laws; (8) the advantage of having a local court determine questions of local law, and (9) the practical considerations that may make a trial easy, expeditious, and economical. *Arrow Elecs., Inc. v. Deco Lighting, Inc.*, No. 18-CV-01100-RM-KLM, 2018 WL 4853338, at *6 (D. Colo. Oct. 5, 2018).  Neither side expressly addresses these factors, but rather argue that each side is attempting to forum shop.  [#8 at 20; #16 at 30]. Nevertheless, this court's analysis is guided by these factors, and on balance, I find the relevant factors support a transfer of Mr. Williams's claims to the Northern District of Georgia.

### 1.    Mr. Williams's Choice of Forum

   While the court generally does not disrupt the plaintiff's chosen forum, it may do so when the plaintiff does not reside in the chosen forum, or when the plaintiff's claims have no material relation or significant connection to the chosen forum.  *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1168-69 (10th Cir. 2010).  Such is the case here.  *See PLX Tech., Inc. v. Knuettel*, No. 11-CV-03256-DME-KMT, 2012 WL 1813291, at *2 (D. Colo. May 17, 2012) (affording less weight to the plaintiff's chosen forum because the plaintiff did not maintain its principal place of business in Colorado).

Mr. Williams is a citizen of Alpharetta, Georgia, where he presumably worked for IBM at the time of the events giving rising to this action. *See* [#1 at ¶ 5]. There is no suggestion that Mr. Williams's work on the HCL deal had any connection to Colorado or that IBM's allegedly tortious conduct towards Mr. Williams occurred in Colorado. Indeed, the Complaint makes clear that the two Plaintiffs led separate teams. *See, e.g.*, [*id.* at ¶ 36]. And, as discussed below, there is no indication that the decisions at issue were made in or communicated from Colorado. *See generally* [#1]. Rather, the reasonable inference is that the conduct giving rise to Mr. Williams's claims has a stronger connection to Georgia, where he works and lives. Under such circumstances, I find that Mr. Williams's claims have no material relation or significant connection to this District, favoring a transfer. *See RV Horizons, Inc. v. Smith*, No. 1:18-CV-02780-NYW, 2019 WL 1077366, at *5 (D. Colo. Mar. 7, 2019) (explaining that court "must determine whether the forum activities played a substantial role in the circumstances leading up to the plaintiff's claim." (internal quotation marks omitted)); *Sanchez v. Miller*, No. 15-CV-01615-REB-MEH, 2016 WL 675816, at *3 (D. Colo. Feb. 19, 2016) (finding no material relation or substantial connection to Colorado where the "gravamen" of the plaintiff's claims concerned conduct by the defendant in Minnesota, and where no evidence or allegations suggested said conduct occurred in Colorado).

### 2.      Accessibility of Witnesses and Sources of Proof

Perhaps the most important factor in determining whether to transfer a civil action under § 1404(a) is the convenience to potential witnesses. *PopSockets LLC v. Online King LLC*, No. 19-CV-01277-CMA-NYW, 2019 WL 7168661, at *7 (D. Colo. Dec. 23, 2019). In the briefing on the Motion to Dismiss, the Parties do not identify any specific witnesses. Nevertheless, the Complaint specifically identifies two individuals involved in the communications with Plaintiffs about commissions—Karla Johnson in IBM's Global Sales and Maria Lipner, IBM's Vice President of

Global Sales Incentives.  *See* [#1 at ¶¶ 26, 31].  The Scheduling Order identifies the Plaintiffs and Ms. Johnson as potential witnesses.  [#19 at 10-11].  While there is no indication of Ms. Johnson's location, Ms. Lipner is located in Armonk, New York.  [#1-1 at 4:1-19].[4]  Thus, Ms. Lipner is likely out of the subpoena power of this District, Fed. R. Civ. P. 45, and there has been no showing by either side as to whether Ms. Lipner would readily avail herself to appear in Colorado.  As for the Plaintiffs, Mr. Williams is located in the Norther District of Georgia while Ms. Cahey is located in this District.  Accordingly, the court will assume this factor is neutral with respect to transfer.

### 3.        Cost of Making Necessary Proof

As with the accessibility of witnesses, there is no indication as to how the cost of litigating this matter in the Northern District of Georgia compares to that in this District.  *PLX Tech., Inc.*, 2012 WL 1813291, at \*3.  Thus, the court will assume this factor weighs is neutral with respect to transfer.

### 4.        Court Congestion

"When evaluating the administrative difficulties of court congestion, the most relevant statistics are the median time from filing to disposition, median time from filing to trial, pending cases per judge, and average weighted filings per judge."  *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1169.  According to the Administrative Office of the United States Courts, as of June 30, 2020, the median time from filing to disposition of civil actions in this District is 7.6 months compared to 5.5 months in the Northern District of Georgia; the median time from filing to trial of civil actions in this District is 33.9 months compared to 31.3 months in the Northern District of Georgia; the

---

[4] Plaintiffs have incorporated certain deposition testimony from Ms. Lipner into their Complaint and attached that deposition transcript as an exhibit to the Complaint. *See* [#1 at ¶ 32; #1-1].  When citing to a deposition transcript, this court cites to the docket number assigned by the court's Electronic Court Filing system, but to the original page and line number in the transcript.

number of pending cases per judge in this District is 537 compared to 769 in the Northern District of Georgia; and the number of weighted filings in this District is 621 compared to 612 in the Northern District of Georgia.[5]   Administrative Office of the United States Courts, Federal Court Management Statistics, Reports June 2020, *available at* https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2020.pdf, and attached as Ex. A.  Accordingly, this factor weighs in favor of transfer.

### 5.    Conflict of Laws

There appears no dispute that Mr. Williams's claims arise under Georgia law, so there is no express conflicts of law issue.[6]  But, while the court believes it can aptly apply Georgia law to the instant dispute, there remain variances between Colorado law and Georgia law that make resolution of Plaintiffs' claims nuanced and claim-dependent, even if predicated on the same underlying facts.  These nuances carry the risk of different rulings and discovery obligations between the Plaintiffs within the instant lawsuit.  For instance, Plaintiffs only contend that the provisions of the IPL are unlawful, void, and unenforceable under Colorado law, not Georgia law.  *See, e.g.*, [#1 at ¶ 111].  Further, the wealth of case law cited by the Parties regarding similar suits under various state laws, and the inconsistencies within those decisions, only increases the possibility of that risk.  *E.g.*, [#16-1 through #16-10].  In diversity actions, such as this one, "courts prefer the action to be adjudicated by a court sitting in the state that provides the governing

---

[5] Pursuant to Rule 201 of the Federal Rules of Evidence, this court may take judicial notice of the Administrative Office of the United States Courts' publicly available reports concerning judicial caseloads across the United States.  *See Simon v. Taylor*, 252 F. Supp. 3d 1196, 1239 (D.N.M. 2017) (explaining that courts may take judicial notice of publicly available governmental agency reports); *accord comScore, Inc. v. Integral Ad Sci., Inc.*, 924 F. Supp. 2d 677, 691 n.15 (E.D. Va. 2013) (noting that the "Court may take judicial notice of statistical information available through the Administrative Office of United States Courts" when considering transfer under § 1404(a)).

[6] For this reason, the court is not convinced that Mr. Williams engaged in nefarious forum shopping to avoid application of federal case law applying Georgia law.

substantive law." *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1169.  Accordingly, this factor weighs in favor of transfer.

<h3 style="text-align:center">6.       Advantage of Having Local Court Determine Questions of Local Law</h3>

"When the merits of an action are unique to a particular locale, courts favor adjudication by a court sitting in that locale." *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1170.  For similar reasons as those above, the variances between Colorado and Georgia law favor transfer to the Northern District of Georgia for consideration of Mr. Williams's claims.  And while this court makes no finding as to whether Mr. Williams is forum shopping to avoid the application of Eleventh Circuit law,[7] there is no doubt that this court would likely need to look to case law from the Northern District of Georgia and the Eleventh Circuit, as those courts are more likely than this District and the Tenth Circuit to have developed case law under Georgia law.  Accordingly, this factor weighs in favor of transfer.

<h3 style="text-align:center">7.       Remaining Factors</h3>

Regarding questions as to the enforceability of a judgment if one is obtained and any other practical considerations that would expedite trial, I find these factors favor transfer.  While there is no suggestion that Mr. Williams' ability to enforce a judgment against IBM if successful would vary in either District, practical considerations such as educating a jury on nuances between Colorado and Georgia law, or distinct claims between the Plaintiffs, tip the scale in favor of transfer.

---

[7] Even if Mr. Williams's claims remained in this District, the court would apply the substantive law of Georgia, and look to authority interpreting that law, including from the United States Court of Appeals for the Eleventh Circuit.

**C.      Conclusion**

Although venue in this District is proper, I find that transfer of Mr. Williams's claims to the Northern District of Georgia better serves the convenience of the parties and witnesses and is in the interests of justice.  Thus, pursuant to Rule 21 of the Federal Rules of Civil Procedure, Mr. Williams's claims are **SEVERED** from this action and, pursuant to 28 U.S.C. § 1404(a), Mr. Williams's claims are **TRANSFERRED** to the Northern District of Georgia.  In so doing, the court does not pass on the merits of the instant Motion to Dismiss as those issues are more properly adjudicated by the transferee court.

**II.      Failure to State a Claim – Ms. Cahey**

As it relates to Ms. Cahey, IBM argues the court should dismiss Ms. Cahey's claims for two reasons.  First, it argues that the IPLs foreclose Ms. Cahey's claims because the IPLs provide IBM the discretion to alter, adjust, or deny commissions and thus are not enforceable promises to pay commissions.  *See* [#8 at 5-8; #20 at 1-4].  Second, IBM argues Ms. Cahey fails to plead any plausible claims for relief, largely because of the plain language of the IPL.  *See* [#8 at 8-17; #20 at 4-13].  Because IBM's arguments for dismissal all depend on the IPL, I consider Plaintiff's claims in the order alleged in the Complaint.

**A.      Claims 1 and 2 – Fraudulent Concealment and Fraudulent and Negligent Misrepresentations**

In Claims 1 and 2, Ms. Cahey asserts claims under Colorado law for fraudulent concealment and misrepresentations (Claim 1) and negligent misrepresentations (Claim 2) regarding its sales commissions structure.  *See* [#1 at ¶¶ 68-90].  For the following reasons, I respectfully conclude that Ms. Cahey fails to plead cognizable claims under either theory.

### 1.     Applicable Law

*Fraudulent Misrepresentation and Concealment***.**   Under Colorado law, a fraudulent misrepresentation claim requires Ms. Cahey to allege IBM knowingly misrepresented a material fact, upon which Ms. Cahey reasonably relied, and which caused her damages.  *See Clark v. Green Tree Servicing LLC*, 69 F. Supp. 3d 1203, 1223 (D. Colo. 2014) (quoting *Williams v. Boyle*, 72 P.3d 392, 399 (Colo. App. 2003)).  Relatedly, a fraudulent concealment claims requires Ms. Cahey to allege: (1) IBM concealed a material fact it should have disclosed in equity and good conscience; (2) IBM knew of the concealment; (3) Ms. Cahey was ignorant of the concealed material fact; (4) IBM intended Ms. Cahey to act on the concealment; and (5) Ms. Cahey acted on the concealed fact to her detriment.  *In re Rumsey Land Co., LLC*, 944 F.3d 1259, 1272 (10th Cir. 2019) (quoting *Rocky Mountain Expl., Inc. v. Davis Graham & Stubbs LLP*, 420 P.3d 223, 234 (Colo. 2018)); *accord Wisehart v. Zions Bancorporation*, 49 P.3d 1200, 1204 (Colo. App. 2002) (explaining that fraudulent nondisclosure/omission claims require the same elements as a fraudulent concealment claim).

*Negligent Misrepresentation and Concealment.*   A negligent misrepresentation claim likewise requires misrepresentation of a material due to the lack of reasonable care, with the intent that Ms. Cahey rely on that misrepresentation to her detriment.  *Allen v. Steele*, 252 P.3d 476, 482 (Colo. 2011).   But the Colorado Supreme has not determined whether a negligent misrepresentation claim can be premised on an omission or nondisclosure.  *See, e.g.*, *Leprino Foods Co. v. DCI, Inc.*, 727 F. App'x 464, 472 n.5 (10th Cir. 2018) ("[I]t is unclear whether a claim for negligent nondisclosure is viable at all in Colorado."); *Haney v. Castle Meadows, Inc.*, 839 F. Supp. 753, 756-57 (D. Colo. 1993) (concluding that Colorado would not recognize a tort for negligent concealment in a vendor/purchaser situation, because the concealment of a material

fact would be an affirmative act more appropriately sounding in fraud); *Martin v. Chinese Children Adoption Int'l*, No. 1:19-CV-02305-STV, 2020 WL 1703793, at *5 n.9 (D. Colo. Apr. 8, 2020) (observing that the viability of a negligent misrepresentation claim based on an omission is unresolved). Absent clear guidance from the Colorado Supreme Court, a federal court exercising diversity jurisdiction must predict as to how that court would rule, looking to decisions of the state court of appeals as strongly persuasive, if not governing. *Pehle v. Farm Bureau Life Ins. Co.*, 397 F.3d 897, 901 (10th Cir. 2005) ("Because Wyoming has not directly addressed this issue, this court must make an *Erie*-guess as to how the Wyoming Supreme Court would rule"); *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1230 (10th Cir. 2000) ("Furthermore, this court must follow any intermediate state court decision unless other authority convinces us that the state supreme court would decide otherwise." (formatting altered) (quoting *Daitom, Inc. v. Pennwalt Corp*., 741 F.2d 1569, 1574 (10th Cir. 1984)); *see also, e.g.*, *U.S. ex rel. Sun Constr. Co. v. Torix Gen. Contractors, LLC*, No. 07-CV-01355-LTB-MJW, 2011 WL 841277, at *1 (D. Colo. 2011).

Confronted with this precise question, a court in this District has concluded that "the Colorado Supreme Court would require that a negligent misrepresentation claim be grounded in affirmative statement." *Craig Hosp. v. Tyson Foods, Inc.*, No. 17-CV-02534-REB-STV, 2019 WL 5095737, at *7 (D. Colo. July 22, 2019). *Cf. Aurzadniczek v. Humana Health Plan, Inc.*, No. 15-CV-00146-RM-KMT, 2016 WL 9735775, at *4 (D. Colo. Feb. 23, 2016) (finding that "at this stage of the litigation, the court will assume a viable claim could be found to exist for negligent non-disclosure as analyzed under a negligent misrepresentation analysis."). This court finds that the weight of intermediate Colorado court decisions decline to find a viable claim for negligent

misrepresentation based on an omission, and no other authority persuades this court that the Colorado Supreme Court would find otherwise. *See Craig Hospital*, 2019 WL 5095737, at *7.[8]

### 2. Application

Ms. Cahey alleges that IBM represented to its sales representatives and first-line managers, like Ms. Cahey, that sales commissions equated to a percentage of their sales with accelerators for overachievement and were uncapped. *See, e.g.*, [#1 at ¶¶ 19, 20-21, 27, 31-32, 74]. She alleges she relied on these representations to her detriment when IBM initially paid her commissions on the HCL deal, but later reversed course based on IBM's nondisclosed Quota Setting Guidelines— guidelines purposefully withheld from employees. *E.g.*, [*id.* at ¶¶ 1-2, 33, 45-47, 49-67, 69-80, 82-90]. According to Ms. Cahey, IBM intentionally concealed and misrepresented its commissions structure, or at least negligently misrepresented it. *See generally* [*id.*].

IBM moves to dismiss Claims 1 and 2 for three reasons. First, IBM contends Ms. Cahey fails to allege IBM made any false representations, because statements made in the PowerPoint presentation about the calculation of commissions contained no inconsistencies with how IBM paid commissions or the IPLs, and Ms. Cahey does not allege how statements in unrelated litigation about commissions being uncapped has any bearing on her claims. *See* [#8 at 9, 11; #20 at 4-5, 8]. Second, IBM asserts that Ms. Cahey fails to allege IBM intended to deceive its employees, because the IPLs made clear how IBM paid commissions, including that it retained

---

[8] The Restatement (Third) of Torts: Liability for Economic Harm § 5, cmt. 3 (2020) observes that "a failure to speak, by itself, does not support liability under this Section." But it also notes that liability can be recognized if a defendant chooses to speak and negligently makes an omission that misleads the plaintiff, for instance, if defendant tells part of the truth but negligently fails to add qualifications or other information necessary to avoid conveying a false impression. *Id.* Ultimately, this court find no Colorado authority relying upon the Restatement (Third) of Torts to conclude that negligent misrepresentation may be based on an omission. But even if such a cause of action is viable under Colorado law, this court still concludes that Ms. Cahey has failed to state a cause of action because of the lack of reasonable reliance.

discretion and authority to review and revise commissions at any time. *See* [#8 at 9-10, 11; #20 at 5-6, 11]. Third, and relatedly, IBM argues that Ms. Cahey fails to allege reasonable or justifiable reliance, because the IPLs made clear that IBM retained the right to modify commissions at any time—terms Ms. Cahey acknowledged and agreed to. [#8 at 10-11; #20 at 6-8]. For the following reasons, I respectfully conclude that neither claim is viable as Ms. Cahey has failed to allege an affirmative misrepresentation or reasonable reliance.[9]

    ***Affirmative Misrepresentation.*** To start, the court agrees with IBM that statements made in a separate lawsuit by IBM's Vice President of Global Sales Incentives cannot form the basis of Ms. Cahey's justifiable reliance. Indeed, as IBM argues, nowhere does Ms. Cahey allege the Vice President of Global Sales Incentives made such representations to Ms. Cahey and Plaintiffs concede that they "do not allege that they heard Ms. Lipner say that in her deposition, of course." [#16 at 18]. Instead, as discussed above, she alleges only on information and belief that IBM's policy was not to cap sales commissions, but she fails to specifically identify the representation that led her to that understanding. [#1 at ¶ 32]. *Cf. Middleton v. Int'l Bus. Machines Corp.*, 787 F. App'x 619, 623 (11th Cir. 2019) (holding that deposition testimony from IBM employees, testifying that it was reasonable to rely on IBM's alleged representation of uncapped sales commissions was nothing more than a legal conclusion and could not form the basis for justifiable reliance); *see also Baker v. Wood, Ris & Hames, Prof'l Corp.*, 364 P.3d 872, 883 (Colo. 2016) (explaining that fraudulent concealment claims must be pleaded with particularity under Rule 9(b) of the Federal and Colorado Rules of Civil Procedure).

---

[9] IBM also contends that Ms. Cahey has failed to sufficiently allege scienter on its part. But courts, in various contexts, have acknowledged that ascertaining intent at the motion to dismiss phase is difficult, and may be an issue more properly left for summary judgment. *See, e g.*, *Young v. Kiewit Corp.,* No. 17-CV-01251-WYD-MEH, 2018 WL 3382928, at *4 (D. Colo. Jan. 25, 2018); *DiTucci v. Ashby*, No. 2:19-CV-277-TC-PMW, 2020 WL 1249627, at *4 (D. Utah Mar. 16, 2020).

Despite Plaintiffs' arguments to the contrary, it is not clear that Ms. Johnson's four representations with respect to the calculation of commissions were false, *see* [#16 at 17], and the Complaint lacks any allegation that the PowerPoint presentation relied on by Ms. Cahey contained any similar representations that sales commissions were uncapped. *See* [#1 at ¶ 27]. Nor does a comparison between the PowerPoint presentation's representations and the IPLs yield any inconsistencies that plainly reflect a misrepresentation. *Compare* [#1 at ¶ 27] *with* [#8-1]. Accordingly, this court finds that at least with respect to any fraudulent or negligent misrepresentation cause of action based on affirmative statements, Ms. Cahey has failed to sufficiently allege such affirmative misrepresentation.

**Justifiable Reliance.**   Next, the court considers whether Ms. Cahey has sufficiently alleged justifiable reliance.   Under Claims 1 and 2, Ms. Cahey's reliance must be justifiable, i.e., reasonable. *See, e.g.*, *Stewart Title Guar. Co. v. Dude*, 708 F.3d 1191, 1193 (10th Cir. 2013) ("To win a claim for fraudulent concealment, the plaintiff must also show its reliance on the defendant's misrepresentation was justifiable."); *Alpine Bank v. Hubbell*, 55 F.3d 1097, 1106 (10th Cir. 2009) (explaining that a claim for negligent misrepresentation under Colorado law requires justifiable reliance); *Colorado Coffee Bean, LLC v. Peaberry Coffee Inc.*, 251 P.3d 9, 17 (Colo. App. 2010) ("Fraudulent nondisclosure requires proof of reasonable reliance on the assumption that the concealed fact does not exist or was different from what it actually was."  (internal citations and quotation marks omitted)).   This question presents a close call, particularly given the diversity of opinions from other courts considering this question.   Ultimately, this court agrees with IBM that, while not an enforceable contract, *see supra*, at n.2, the unambiguous language of the IPL precludes any justifiable reliance on the alleged representations that sales commissions were uncapped or based on a straightforward percentage of a sale.

Under Colorado law, "clear and specific language" disclaiming reliance on a defendant's representations can preclude claims for fraudulent misrepresentation and concealment and negligent misrepresentation. *See, e.g.*, *Steak n Shake Enterprises, Inc. v. Globex Co., LLC*, 110 F. Supp. 3d 1057, 1082-83 (D. Colo. 2015) (holding that a non-reliance provision in a Franchisor-Franchisee agreement that stated the parties entered the agreement "not as a result of any representation made by the Franchisor [or its agents]" precluded any fraudulent misrepresentation claim based on the Franchisor's statements regarding profitability (relying on *Keller v. A.O. Smith Harvestore Prods., Inc.*, 819 P.2d 69, 74 (Colo. 1991))); *Student Mktg. Grp., Inc. v. Coll. P'ship, Inc.*, 247 F. App'x 90, 99 (10th Cir. 2007) (concluding an agreement between the parties that contained clear and specific language of disclaimers of warranties and broad limitations on tort and negligence liability precluded the plaintiff's negligent misrepresentation claim); *Colo. Coffee Bean, LLC*, 251 P.3d at 19 (concluding that clear and specific language disclaiming reliance on any representations of actual or potential profits from operation of a franchise precluded a claim for fraudulent nondisclosure where the defendant did not disclose the net losses at some company stores).

Though the respective language in these cases are drawn from enforceable agreements, this court finds that the IPL need not be separately enforceable to provide adequate notice to Ms. Cahey to negate her justifiable reliance. Indeed, while the decision in *Geras v. Int'l Business Machines Corporation*, 638 F.3d 1311, 1316 (10th Cir. 2011), did not pass on whether a claim for fraudulent misrepresentation or concealment or negligent misrepresentation could survive in light of an IPL, the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") made clear that the clear language of the IPL at issue in that case reflected IBM's retention of "full discretion." *Id.* at 1317. Here, the IPL similarly unequivocally provides that IBM retains "the right to review and, in its

sole discretion, adjust or require repayment of incorrect incentive payments resulting from incomplete incentives processes or other errors in the measurement of achievement or the calculation of payments, including errors in the creation or communication of sales objectives[,]" with such adjustment being "made before or after the last day of the full-Plan period, and before or after the affected payment has been released."  [#8-1 at 10 (emphasis added)].

Whether Ms. Cahey was aware of the basis for how IBM made such adjustments does not negate the fact that Ms. Cahey was aware of the IPL and its effect on her compensation.  In her Complaint and Response to the Motion to Dismiss, Ms. Cahey acknowledges that at least "some of the inputs for the formulas used to calculate the commissions payable" to her were contained in the IPL, see [#1 at ¶ 134], and that "[t]he actual commissions quotas, formulas, and percentages for each salesperson are contained in a document for each salesperson called the 'Incentive Plan Letter,' or IPL," [#16 at 4-5].  Under such circumstances, following the Tenth Circuit's reasoning in Geras, Ms. Cahey does not sufficiently plead facts that allow a factfinder to conclude that she justifiably relied upon IBM's silence to mean that sales commissions would not be capped or could not be reversed in light of the express disclaimer in the IPL.  Cf. Malone v. City of Wynnewood, No. Civ-17-0527-HE, 2017 WL 3671170, at *2 (W.D. Okla. 2017) (citing Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n, 771 F.3d 1230, 1238 (10th Cir. 2014) ("Where a complaint references extrinsic documents which contradict other general allegations in the complaint, a court is not obliged to accept the contradicted allegations as true.")); Middleton, 787 F. App'x at 623 (dismissing the plaintiff's fraudulent and negligent misrepresentation claims because "the IPL [] gave IBM the right to 'review and, in its sole discretion, adjust incentive achievement' for [various reasons]" and  "Middleton could not reasonably believe otherwise.").

This court notes the contradiction recognized by other courts that IBM can simultaneously disavow the IPL as a contract but rely upon it for a disclaimer. *Fessler v. Int'l Bus. Machines Corp.*, 959 F.3d 146, 153 (4th Cir. 2020). But in other contexts, the Tenth Circuit has recognized that clear and unequivocal disclaimers, even when such disclaimers do not arise in binding agreements, will otherwise render a plaintiff's reliance on contradictory statements unreasonable as a matter of law. *See Myers v. All. for Affordable Servs.*, 371 F. App'x 950, 958 (10th Cir. 2010) (finding that plaintiffs' reliance on contradictory statements by an insurance agent was negated by clear and unambiguous disclaimers in the insurance application). And Ms. Cahey does not plead sufficient facts in her Complaint for a factfinder to conclude that other representations by IBM negated this express disclaimer set forth in the IPL. *Cf. Fessler*, 959 F.3d at 154 (observing that Fessler alleged that "PowerPoint presentation [] repeatedly informed him that his commissions would be uncapped."). Here, as discussed above, Ms. Cahey does not allege that Ms. Johnson's PowerPoint presentation affirmatively represented that her commissions would be uncapped. Given these circumstances, this court concludes that Ms. Cahey has not stated a cognizable claim for fraudulent or negligent misrepresentation.

Accordingly, the court will **GRANT** the Motion to Dismiss in this regard and **DISMISS** Claims 1 and 2.

### B.      Claims 3 and 4 – Quantum Meruit and Unjust Enrichment

#### 1.      Applicable Law

"Quantum meruit is an equitable theory of recovery that arises out of the need to avoid unjust enrichment to a party in the absence of an actual agreement to pay for services rendered." *Tegu v. Vestal Design Atelier LLC*, 407 F. Supp. 3d 1171, 1181 (D. Colo. 2019) (quoting *Melat, Pressman & Higbie, L.L.P. v. Hannon Law Firm, L.L.C.*, 287 P.3d 842, 847 (Colo. 2012)). In

Colorado, the doctrine of quantum meruit is synonymous with the doctrine of unjust enrichment,[10] *Dudding v. Norton Frickey & Assocs.*, 11 P.3d 441, 444 (Colo. 2000), and "does not depend on the existence of a contract, either express or implied in fact" but rather "seeks to restore fairness when a contract fails by ensuring that the party receiving the benefit of the bargain pays a reasonable sum for that benefit," *Matter of Gilbert*, 346 P.3d 1018, 1023 (Colo. 2015) (internal quotation marks omitted).  *See also Van Zanen v. Qwest Wireless, L.L.C.*, 522 F.3d 1127, 1130 (10th Cir. 2008) (explaining that under Colorado law "unjust enrichment is a judicially created remedy designed to avoid benefit to one to the unfair detriment of another," and "centers [its] attention on the prevention of injustice."  (citations and internal quotation marks omitted)); *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1007-08 (Colo. 2008) (holding that an unjust enrichment claim may sound in tort when based on alleged fraud).

To plead a plausible quantum meruit claim, Ms. Cahey must allege (1) IBM received a benefit, (2) at Ms. Cahey's expense, and (3) it would be unjust under the circumstances to allow IBM to retain that benefit without paying for it.  *Crew Tile Distribution, Inc. v. Porcelanosa Los Angeles, Inc.*, No. 13-CV-3206-WJM-KMT, 2016 WL 8609397, at *15 (D. Colo. Sept. 9, 2016) (citing *Dudding*, 11 P.3d at 445); *accord Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 923 (10th Cir. 2018) (explaining that a claim for unjust enrichment requires the plaintiff to plead the same three elements (citing *Lewis v. Lewis*, 189 P.3d 1134, 1141 (Colo. 2008))).  Generally, a party may not recover under a theory of quantum meruit or unjust enrichment when there is an express contract addressing the subject of the alleged obligation to pay.  *Interbank Invs., LLC v. Eagle River Water & Sanitation Dist.*, 77 P.3d 814, 816 (Colo. App. 2003).  That is, unless "(1) the express contract fails or is rescinded, or (2) the claim covers matters that are outside of or arose after the contract."

---

[10] For this reason, I consider Claims 3 and 4 together.

*Pulte Home Corp., Inc. v. Countryside Cmty. Ass'n, Inc.*, 382 P.3d 821, 833 (Colo. 2016) (internal citation omitted).

2.      **Application**

IBM moves to dismiss Claims 3 and 4 because although the "IPLs did not create any contractual obligations requiring IBM to pay [Ms. Cahey] additional commissions, the IPLs were agreements that spelled out the parties' respective rights and responsibilities with respect to the payment of commissions." [#8 at 12].  According to IBM, Ms. Cahey agreed to the IPL and IBM's absolute discretion to modify and/or alter commissions, and thus there is nothing unjust or unfair in reversing commissions on the HCL deal.  *See* [*id.* at 12-13; #20 at 9-10].  Ms. Cahey counters, and the court agrees, that the IPL cannot foreclose Claims 3 and 4 because it is not an enforceable contract.  *See* [#16 at 24].

Both Parties agree that the IPL is not an enforceable promise to pay commissions and thus it is disingenuous for IBM to now argue that it should be given at least enough legal effect to preclude claims for quantum meruit or unjust enrichment.  *See Interbank Invs., LLC*, 77 P.3d at 816 (explaining that claims for quantum meruit or unjust enrichment cannot lie where an express contract covers the payment obligations).  Indeed, under Colorado law, there may be instances where the plaintiff is entitled to compensation under a theory of unjust enrichment "even in the face of a contract with a clearly expressed contrary intent, if justice requires."  *Martinez v. Colo. Dep't of Human Servs.*, 97 P.3d 152, 159 (Colo. App. 2003).  Nor does an implied contract preclude a claim for quantum meruit or unjust enrichment where the plaintiff seeks to restore fairness where that contract fails.  *See Matter of Gilbert*, 346 P.3d at 1023.  Ms. Cahey does just that: she alleges that IBM received a benefit from the HCL deal, at Ms. Cahey's expense given its withholding of future commissions to recoup commissions paid on the HCL deal, and it would be

24

unjust under the circumstances to allow IBM to reap the rewards of that benefit without compensating Ms. Cahey. *See generally* [#1 at ¶¶ 91-101]. And this court is not convinced that dismissal of Claims 3 and 4 is warranted merely because other district courts have dismissed similar claims under various state laws, as IBM suggests. Accordingly, I **DENY** the Motion to Dismiss in this regard.

### C.      Claim 5 – Colorado Wage Claim Act

#### 1.      Applicable Law

The Colorado Wage Claim Act ("CWCA"), Colo. Rev. Stat. § 8-4-101 *et seq.*, "is designed to require employers to pay wages earned by their employees in a timely manner." *Brownlee v. Lithia Motors, Inc.*, 49 F. Supp. 3d 875, 878 (D. Colo. 2014). The CWCA defines "wages" or "compensation" to include "All amounts for labor or service performed by employees" that "are earned, vested, and determinable," which includes commissions earned under "any agreement between an employer and employee." Colo. Rev. Stat. §§ 8-4-101(14)(a)(I)-(II). Its purpose is to ensure that "employers make timely payment of wages and to provide adequate judicial relief when employers fail to pay wages when due." *Cagle v. Mathers Family Trust*, 295 P.3d 460, 469 (Colo. 2013) (ellipsis and internal quotation marks omitted). To that end, the CWCA allows "[a]ny person claiming to be aggrieved by violation of any provision of [the CWCA]" to bring suit "in any court having jurisdiction over the parties[.]" Colo. Rev. Stat. § 8-4-110(2). But the CWCA itself does not create any substantive rights; it establishes only the minimum requirements for how

and when agreed compensation must be paid. *Kouzmanoff v. Unum Life Ins. Co. of Am.*, 374 F. Supp. 3d 1076, 1088 (D. Colo. 2019).

### 2. Application

IBM moves to dismiss Claim 5 because, again, the IPL deemed Ms. Cahey's commissions an "advance" and not "earned" wages or compensation. *See* [#8 at 14; #20 at 10-11]. Moreover, IBM contends that the IPL is not an enforceable contract and therefore commissions cannot be deemed earned, vested, and determinable, as the IPL prescribed IBM the sole discretion to modify commissions at any time. *See* [#8 at 14; #20 at 11-12]. Ms. Cahey counters that the existence of an enforceable contract is not necessary to the viability of her CWCA claim, because an agreement can arise between the Parties by way of "some sort of agreement, understanding, or course of conduct between an employee and her employers to support a [CWCA] claim[.]" [#16 at 25]. Additionally, Ms. Cahey argues that she adequately alleges that the commissions from the HCL deal were "earned" under the terms of the IPL. *See* [*id.* at 25-26].

For purposes of the CWCA, wages or compensation are "earned, vested, and determinable when an employee has an enforceable right to receive payment for such benefits pursuant to an employment agreement." *Gomez v. Children's Hosp. Colorado*, No. 18-CV-00002-MEH, 2018 WL 3303306, at *5 (D. Colo. July 8, 2018) (citing *Fang v. Showa Entetsu, Co.*, 91 P.3d 419, 422 (Colo. App. 2003)). Relevant here, an employer must pay commissions "earned for labor or services performed in accordance with the terms of <u>any</u> agreement between an employer and employee." Colo. Rev. Stat. § 8-4-101(14)(a)(II) (emphasis added). While the IPL is not an enforceable contract, it still constitutes some sort of agreement between the Parties—without it, there would be no basis for IBM to ever pay commissions, which it apparently does in its regular course of conduct. *See Kirkland v. Robert W. Baird & Co.*, No. 18-CV-02724-MSK-SKC, 2020

WL 1452165, at *8 (D. Colo. Mar. 25, 2020) ("In order to establish a violation of the CWCA, Mr.

Kirkland must show he was owed commissions that were earned, vested, and determinable under

the terms of the Offer and the parties' course of conduct at the time of his August 2, 2018

termination."  (emphasis added)); *cf. Lozoya v. AllPhase Landscape Constr., Inc.*, No. 12-CV-

1048-JLK, 2015 WL 1757080, at *2 (D. Colo. Apr. 15, 2015) (denying summary judgment to the

plaintiffs because there were questions of material fact as to how the defendant applied its written

policy and whether that resulted in unpaid, earned wages).  Moreover, "earned under the employee

agreement is not limited to compensation 'explicitly authorized by the agreement.'"  *Coldwell v.*

*RITECorp Envtl. Prop. Sols.*, No. 16-CV-01998-NYW, 2018 WL 5043904, at *5 (D. Colo. Oct.

17, 2018) (discussing *Hernandez v. Ray Domenico Farms, Inc.*, 414 P.3d 700, 701-04 (Colo. 2018)

(holding that the CWCA permits employees to seek overtime compensation not contemplated

under their employment agreement, which included any earned yet not paid overtime prior to the

employees' termination)).

Further, while IBM retained discretion to modify or alter incorrect commissions already

paid at any time, I conclude that this discretion does not mean no commissions are ever deemed

earned.  *Cf. Koutzmanoff*, 374 F. Supp. 3d at 1089 (stating in *dicta* that short-term disability

benefits were not vestable because the life insurance policy gave the insurer unfettered discretion

to modify or cancel those benefits at any time for any reason).  Rather, the IPL explains that

commissions are deemed earned under the IPL "only after the measurement of complete business

results following the end of the full-Plan period."  [#8-1 at 9].  Even IBM concedes that "the IPLs

were agreements that spelled out the parties' respective rights and responsibilities with respect to

the payment of commissions."  [#8 at 12].  Ms. Cahey alleges she consummated the HCL deal on

June 30, 2019, [#1 at ¶¶ 33-36], which coincided with the end of the full-Plan period under the

applicable IPL, *see* [#8-1 at 7], and that IBM paid the commissions in August 2019 <u>after</u> completing its review of the sale, *see* [#1 at ¶¶ 39-46].  While the IPL certainly provides IBM the discretion to modify or alter commissions paid, even after the end of the full-Plan period, [#8-1 at 10], I am not convinced at this juncture that the court can properly determine the issue of when the IPL deems commissions earned or that this somehow disavows Ms. Cahey's allegations that the HCL deal commissions were earned under the IPL.  Thus, I conclude Ms. Cahey adequately pleads a CWCA claim, and therefore **DENY** the Motion to Dismiss in this regard.

> **D.**      **Claim 6 – Declaratory Judgment**

> **1.**      **Applicable Law**

The Declaratory Judgment Act provides: "In a case or controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  "The purpose of the Declaratory Judgment Act is to settle actual controversies before they ripen into violations of law or a breach of duty."  *United States v. Fisher-Otis Co.*, 496 F.2d 1146, 1151 (10th Cir. 1974).  "The [Declaratory Judgment] Act merely provides a procedure empowering a federal court to declare the legal rights and obligations of adversaries engaged in a justiciable controversy."  *Kunkel v. Cont'l Cas. Co.*, 866 F.2d 1269, 1273 (10th Cir. 1989).

> **2.**      **Application**

IBM moves to dismiss Ms. Cahey's claim for declaratory judgment because declaratory judgment is a form of relief, not a separate cause of action.  [#8 at 15; #20 at 12].  Further, IBM argues that, because Ms. Cahey's substantive claims are subject to dismissal, her request for declaratory judgment must fail as a matter of law.  *See* [#8 at 15; #20 at 12].  I respectfully disagree.

As Ms. Cahey argues, Claim 6 requests that the court declare the rights and obligations of the Parties as it relates to IBM's claw back of the commissions paid to Ms. Cahey on the HCL deal. *See* [#1 at ¶¶ 124-29]. Specifically, Ms. Cahey asks the court to declare such practices illegal. Such a request appears appropriate, given that some of Ms. Cahey's claims survive the Motion to Dismiss and thus a live case or controversy exists between the Parties. *See Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*, 353 F. Supp. 3d 1070, 1088-89 (D. Colo. 2018) (concluding the plaintiffs adequately pleaded a Declaratory Judgment Act claim by seeking a declaration from the court that the defendant owed the plaintiffs a legal duty, that the defendant continued to breach that duty, and that the defendant did so to the plaintiffs' detriment). *Cf. Mitchell v. Wells Fargo Bank,* 355 F. Supp. 3d 1136, 1160 (D. Utah 2018) (allowing a claim for declaratory judgment to go forward with a fraudulent nondisclosure claim). Accordingly, I **DENY** the Motion to Dismiss in this regard.

### E.      Claim 7 – Breach of Contract

Relying on *Geras*, 638 F.3d 1311 (10th Cir. 2011), IBM argues that the IPLs foreclose all of Ms. Cahey's claims, including her breach of contract claim, because the IPLs are not enforceable promises to pay uncapped commissions. *See* [#8 at 7-8; #20 at 2-4]. According to IBM, federal district courts have uniformly held, consistent with *Geras*, that the IPLs foreclose breach of contract claims (and others) for unpaid commissions. *See* [#8 at 7-8 & n.5; #20 at 2-4 & n.1]. Ms. Cahey responds that *Geras* does not foreclose her breach of contract claim but, even still, she asserts additional claims sounding in fraud based on representations IBM made about uncapped commissions notwithstanding the IPLs. *See* [#16 at 11-16]. Ms. Cahey argues that several courts have found that the IPLs do not preclude these additional claims that sound in fraud. *See generally* [*id.*]. For the following reasons, I conclude that *Geras* warrants dismissal of Ms. Cahey's breach

of contract claim (Claim 7) but, as discussed above, does not necessarily require dismissal of Ms. Cahey's other claims.

In *Geras*, the plaintiff David Geras ("Mr. Geras") sued IBM for its alleged wrongful withholding of commissions Mr. Geras believed he earned while working for IBM. 638 F.3d at 1313. Much like Ms. Cahey, Mr. Geras's commissions compensation structure was detailed in a Field Management System letter (the "letter") that contained the following provisions:

> **Right to Modify or Cancel:** The Incentive Plan is described on the Internal Incentive Plan Website ..., and you should rely on the details provided within the Website for up-to-date information. <u>The Plan does not constitute an express or implied contract or a promise by IBM to make any distributions under it.</u> IBM reserves the right to adjust the Plan terms, including but not limited to any quotas or target incentives, or to cancel the Plan, for any individual or group of individuals, at any time during the Plan period up until any related payments have been earned under its terms.... Employees should make no assumptions about the impact potential Plan changes may have on their personal situations unless and until any such changes are formally announced by IBM.

> **Advances Against Final Business Results:** Because your Plan quotas (or similar performance objectives) are based on a business model dependent on complete, final, and accurate business results, periodic payments you may receive under the Plan are advances. Deductions for overpayments may be made from any advances paid to you up until the payments are earned under the plan terms. Payments are earned at the end of the quarter following the end of your plan period (for example, for some six-month plans, the Plan period ends on June 30 and therefore the payments are earned on the following September 30th ...) provided the following conditions have been met: (1) you have complied with the Incentive Plan, the Business Conduct Guidelines and other IBM policies; (2) you have not engaged in any fraud or misrepresentation relating to any of your sales transactions or incentives; (3) the customer has paid the invoice for the sales transaction related to your incentive; and (4) the incentives processes and calculations are final and contain no errors. If any of the foregoing conditions have not been met, then the incentive is not earned.

> ....

> **Significant Transactions:** IBM Management reserves the right to review and, in its sole discretion, adjust incentive payments associated with transactions which (1) are disproportionate when compared with the territory opportunity or quota size; or for which (2) the incentive payments are disproportionate when compared with the individual's performance contribution towards the transactions.

> **Adjustments for Errors:** IBM reserves the right to review and, in its sole discretion, adjust or require repayment of incentives payments resulting from any errors in incentives processes or calculations.
>
> **Progress Reports:** Any information regarding Plan achievement that may be made available to employees during the year is provided for information purposes only, and does not constitute a promise by IBM to make any specific distributions to any employee.

*Id.* at 1313-14 (emphasis added).  Mr. Geras alleged that IBM violated the letter by withholding commissions Mr. Geras believed he earned and asserted two claims under Colorado law for breach of contract and promissory estoppel in the alternative.  *See id.*

The Tenth Circuit dismissed Mr. Geras's breach of contract and promissory estoppel claims.  It held that, notwithstanding IBM's disclaimer that the letter did not constitute an express or implied contract or promise by IBM to make commissions payments, the "letter makes clear IBM's intent not to be bound by the policies described therein."  *Id.* at 1316. This was because the letter did not suggest "any circumstances in which the payment of incentives could be considered mandatory," and it "reiterated that IBM retained the discretion to alter or cancel these policies, even after sales had occurred[.]"  *Id.* at 1316-17.  According to the Tenth Circuit, the letter made clear that IBM did not intend to "enter into an enforceable contract to provide incentive payments"—a finding consistent with other courts considering similar IBM commissions structures—and so Mr. Geras could not maintain either a breach of contract or promissory estoppel claim based on the letter.  *Id.* at 1317 (citing *Jensen v. IBM*, 454 F.3d 382, 388, 390 (4th Cir. 2006); *Schwarzkopf v. IBM*, 2010 WL 1929625, at *8 (N.D. Cal. May 12, 2010); *Gilmour v. IBM*, 2009 U.S. Dist. LEXIS 127142, at *3 (C.D. Cal. Dec. 16, 2009); *Rudolph v. IBM*, 2009 WL 2632195 (N.D. Ill. Aug. 21, 2009)).

Ms. Cahey's IPL contains nearly identical language as that contained in Mr. Geras's letter. *Compare Geras*, 638 F.3d at 1313-14 *with* [#8-1 at 9-10]. While Ms. Cahey attempts to distinguish her breach of contract claim from that in *Geras* by highlighting the absence in her IPL of any disclaimer that the IPL was not an enforceable contract, *see* [#1 at ¶¶ 132-35; #16 at 15], she concedes that the terms in the IPL disavow any suggestion that the IPL is an enforceable contract concerning the payment of commissions, *see* [#16 at 27 ("Plaintiffs agree with IBM that the IPLs are not enforceable contracts")]. As in *Geras*, the IPL, even without an explicit disclaimer, makes clear that IBM retains the discretion and authority to alter the IPL or any payment of commissions at any time, even if the sale had occurred. *See* [#8-1 at 9-10]. Indeed, under Colorado law, illusory promises, like those in the IPLs, which render performance wholly discretionary, cannot form the basis of an enforceable contract. *Vernon v. Qwest Commc'ns Int'l, Inc.*, 857 F. Supp. 2d 1135, 1153-54 (D. Colo. 2012) (explaining that "an illusory contract is said to lack mutuality of obligation."). The IPL therefore dispels any breach of contract claim based on a purported violation of the IPL. Accordingly, I **GRANT** the Motion to Dismiss in this regard and **DISMISS** Claim 7. *See Geras*, 638 F.3d at 1316-17.

### F.      Claim 8 – Exemplary Damages

In her Complaint, Ms. Cahey asserts a claim for exemplary damages (Claim 8). [#1 at ¶¶ 138-41]. IBM moves to dismiss Claim 8 because it is not a separate claim but rather is a form of relief that is derivative of Ms. Cahey's claims, and because Ms. Cahey fails to plead any plausible claims for relief, her claim for exemplary damages necessarily fails. *See* [#8 at 17; #20 at 13]. The court agrees that Ms. Cahey's request for exemplary damages is improper at this stage but for different reasons.

Under Colorado law, a litigant is entitled to an award of exemplary (i.e., punitive) damages if the "wrong done . . . is attended by circumstances of fraud, malice, or willful and wanton conduct[.]"  Colo. Rev. Stat. § 13-21-102(1)(a).  But an initial complaint cannot contain a request for exemplary damages; only after the parties exchange initial disclosures may a party move to amend her pleading to include such a request and only if she "establishes prima facie proof of a triable issue."  *Residences at Olde Town Square Ass'n v. Travelers Cas. Ins. Co. of Am.*, 413 F. Supp. 3d 1070, 1073 (D. Colo. 2019) (quoting Colo. Rev. Stat. § 13-21-102(1)(a)).  Courts in this District have found no conflict between Colo. Rev. Stat. § 13-21-102 and the Federal Rules of Civil Procedure and have held that Colo. Rev. Stat. § 13-21-102 controls whether to permit amendment of a pleading to assert a request for exemplary damages.  *See Wollam v. Wright Medical Group, Inc.*, No. 1:10-cv-3104-DME-BNB, 2012 WL 4510695, at *9 (D. Colo. Sept. 30, 2012); *Witt v. Condominiums at the Boulders Ass'n,* No. 04-cv-02000-MSK-OES, 2006 WL 348086, at *7 (D. Colo. Feb. 13, 2006).

Ms. Cahey has not complied with the requirements of Colo. Rev. Stat. § 13-21-102(1.5)(a), and thus the court **STRIKES** her request for punitive damages. *See Gen. Steel Domestic Sales, LLC v. Chumley*, No. 10-CV-01398-PAB-KLM, 2011 WL 2415167, at *6 (D. Colo. June 10, 2011) (striking the plaintiff's request for exemplary damages contained in the complaint for failure to comply with Colo. Rev. Stat. § 13-21-102(1.5)(a)); *Glaser v. Jordan*, No. 09-CV-01758-REB-MJW, 2010 WL 1268151, at *2 (D.Colo. March 30, 2010) (same).  In reaching this conclusion, the court in no way suggests Ms. Cahey cannot seek to later amend her Complaint pursuant to Colo. Rev. Stat. § 13-21-102(1.5)(a) and expresses no opinion as to the merits of such a request.

## CONCLUSION

Therefore, for the reasons stated herein, **IT IS ORDERED** that:

(1)     Defendant's Motion to Dismiss [#8] is **GRANTED IN PART and DENIED IN PART**;

(2)     Pursuant to Rule 21 of the Federal Rules of Civil Procedure, the court **SEVERS** Mr. Williams's claims from this action and **TRANSFERS** those claims to the United States District Court for the Northern District of Georgia;

(3)     Ms. Cahey's Claims 1, 2, and 7 are **DISMISSED without prejudice**;

(4)     Ms. Cahey's Claims 3, 4, 5, and 6 **REMAIN**; and

(5)     Ms. Cahey's claim for exemplary damages (Claim 8) is **STRICKEN** from the Complaint.

DATED: September 1, 2020                          BY THE COURT:

                                                 Nina Y. Wang
                                                 United States Magistrate Judge